# UNITED STATES DISTRICT COURT
# MIDDLE DISTRICT OF FLORIDA
# TAMPA DIVISION

UNITED STATES OF AMERICA

v.                                                          CASE NO: 8:18-cr-245-CEH-CPT

MANUEL ANTONIO RENGFRIO
HIDROVO

_____

## ORDER

This matter comes before the Court on Defendant Manuel Antonio Rengfrio Hidrovo's Amended Motion for Compassionate Release (Doc. 169). Proceeding *pro se*, Hidrovo requests compassionate release because of the combination of his medical conditions and what he alleges is inadequate treatment for them, as well as the conditions of confinement he faced during the COVID-19 lockdowns. The Government has responded in opposition (Doc. 173), and Hidrovo has filed a reply (Doc. 175).

Upon review and full consideration, and being duly advised in the premises, the Court finds that the motion for compassionate release is due to be denied.

### I.   Background

On November 1, 2018, Hidrovo was sentenced to a term of incarceration of 135 months, after he pleaded guilty to conspiracy to possess and distribute cocaine while on board a vessel subject to the jurisdiction of the United States. Docs. 117, 48. Now 48 years old, he is serving his term of imprisonment at F.C.I. Fort Dix.

Hidrovo filed a motion for compassionate release in 2022. Doc. 158. Before it was decided, he sought permission to file an amended motion for compassionate release. *See* Doc. 167. The amended motion is now before the Court. Doc. 169. In it, Hidrovo argues that a combination of factors constitute an extraordinary and compelling reason that warrants compassionate release. First, he details his various medical conditions, which include diabetes, hypertension, high cholesterol, hypothyroidism, and arterial disease. *Id.* at 3-7; Doc. 169-1. He asserts that the Bureau of Prisons ("BOP") is not properly managing this panoply of ailments, causing his symptoms to worsen and placing him at heightened risk of death. Doc. 169 at 3-7, 16-18. In particular, Hidrovo notes that a diabetic diet is not available, the BOP is not checking his hormone levels as often as recommended, and medical staff have issued contradictory records regarding his diagnosis of arterial disease. *Id.* He provides medical records and an affidavit that explains his current physical status, which has worsened since the filing of the amended motion. Doc. 169-1; Doc. 175 at 15-16. Hidrovo attests in the affidavit that he experiences painful swelling of his legs, which prevents him from standing for more than five minutes or walking for long distances. *Id.* He also suffers from chest and back pain that prevents him from exercising or traveling to different sections of the prison, including the outdoor recreation area. *Id.* Further, he is experiencing significant and worsening hearing loss but has not received hearing aids. *Id.*

Hidrovo contends that his medical conditions place him at risk of severe illness if he contracts COVID-19, from which F.C.I. Fort Dix fails to adequately protect its

inmates. Doc. 169 at 9-11, 14-15.  In addition, he describes the damage to his physical and mental health that the COVID-19 lockdowns caused, and he argues that the conditions of confinement he experienced during the lockdowns constituted an Eighth Amendment violation. *Id.* at 18-24.  Hidrovo also draws the Court's attention to the sentence reduction that he expects to receive from the then-upcoming enactment of Amendment 821 to the Sentencing Guidelines. *Id.* at 12.  In all, Hidrovo asks the Court to consider the totality of the factors he described as an extraordinary and compelling reason for compassionate release. *Id.* at 25-26.  Hidrovo also asserts that the sentencing factors under 18 U.S.C. § 3553(a) support his release, including the fact that he has served more than half of his sentence, his offense was non-violent, and he will be deported to Ecuador when he is released. *Id.* at 26-28.

     Responding in opposition, the Government argues that Hidrovo has not established an extraordinary and compelling reason for compassionate release. Doc. 173.  The Government's arguments are based on the legal standard that existed until certain amendments to the Sentencing Guidelines took effect on November 1, 2023. *Id.*  The Government contends that the BOP is adequately treating Hidrovo's medical conditions, which do not impact his ability to ambulate or provide self-care, and that Fort Dix is no longer experiencing lockdowns or a COVID outbreak. *Id.* at 2-7.  In any event, the Government argues, the § 3553(a) factors do not support Hidrovo's release because, in the Government's experience, Hidrovo's age and medical conditions would not prevent him from reoffending. *Id.* at 8.

In his reply, Hidrovo challenges the Government's reliance on unsworn statements about conditions at Fort Dix, which he argues are inaccurate, anecdotes about recidivism, and a legal standard that is no longer in place. Doc. 175. He also disputes the Government's contentions about the relevance of his eligibility for relief under Amendment 821. *Id.*

On October 29, 2024, the Court granted Hidrovo's unopposed motion for a sentence reduction under Amendment 821. Doc. 191. Amendment 821 retroactively revised certain criminal history point calculations under the Guidelines. The Court determined that Hidrovo was eligible for relief under the amendment and the § 3553(a) factors supported a retroactive reduction of his sentence from 135 months to 120 months. *Id.* The BOP expects Hidrovo to be released in November 2025.

## II.   Legal Standard

Pursuant to 18 U.S.C. § 3582(b), a judgment of conviction that includes a sentence of imprisonment "constitutes a final judgment and may not be modified by a district court except in limited circumstances." *Dillon v. United States*, 560 U.S. 817, 824 (2010) (internal quotations omitted). Those limited circumstances are provided under 18 U.S.C. § 3582(c), which states, in relevant part:

> The court may not modify a term of imprisonment once it has been imposed except that—
>
> (1) in any case—
>
> > (A) the court, upon motion of the Director of the Bureau of Prisons, or upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse

> of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier, may reduce the term of imprisonment (and may impose a term of probation or supervised release with or without conditions that does not exceed the unserved portion of the original term of imprisonment), after considering the factors set forth in section 3553(a) to the extent that they are applicable, if it finds that—
>
>> (i) extraordinary and compelling reasons warrant such a reduction; […]
>
> and that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission[.]

18 U.S.C. § 3582(c). The movant bears the burden of establishing the existence of the circumstances described in § 3582(c). *See United States v. Hamilton*, 715 F.3d 328, 337 (11th Cir. 2013) (addressing § 3582(c)(2)).

"Extraordinary and compelling reasons" that warrant a sentence reduction under § 3582(c)(1)(A) are exclusively defined by the United States Sentencing Guidelines. *United States v. Bryant*, 996 F.3d 1243, 1262 (11th Cir. 2021). Pursuant to an amendment that became effective on November 1, 2023, U.S.S.G. § 1B1.13(b) lists the following extraordinary and compelling reasons:

(1) Medical circumstances
(2) Age
(3) Family circumstances
(4) Victim of abuse
(5) Other reasons
(6) Unusually long sentence.

U.S.S.G. § 1B1.13(b). The amended Guidelines define each of these reasons.

If the Court finds that one of the reasons listed in 18 U.S.C. § 3582(c)(1)(A) or § 2582(c)(2) is present, it must consider all applicable factors listed in 18 U.S.C. § 3553(a) before it may reduce a defendant's sentence.[1] *See* § 3582(c)(1)(A).

### III. Discussion

As Hidrovo correctly identifies, the Court decides this motion under the revised standard for extraordinary and compelling reasons that is set forth in the amended Sentencing Guidelines. *See* U.S.S.G. § 1B1.13(b). Hidrovo argues that he has established the extraordinary and compelling reasons of "medical circumstances" and "other reasons."

Subsection (1) of the Sentencing Guidelines' list of extraordinary and compelling reasons defines "medical circumstances," in relevant part, as:

- (1)(B)(i): "a serious physical or medical condition…that substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover";

- (1)(C): "a medical condition that requires long-term or specialized medical care that is not being provided and without which the defendant is at risk of serious deterioration in health or death"; or

---

[1] These factors include: (1) the nature and circumstances of the offense and the history and characteristics of the defendant; (2) the need for the sentence imposed to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense; to afford adequate deterrence to criminal conduct; to protect the public from further crimes of the defendant; and to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner; (3) the kinds of sentences available; (4) the kinds of sentence and the sentencing range established for the applicable category of offense committed by the applicable category of defendant as set forth in the guidelines; (5) any pertinent policy statement issued by the Sentencing Commission; (6) the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct; and (7) the need to provide restitution to any victims of the offense. 18 U.S.C. § 3553(a).

- (1)(D)(ii): "due to personal health risk factors and custodial status, the defendant is at increased risk of suffering severe medical complications or death as a result of exposure to [an] ongoing outbreak of infectious disease or [an] ongoing public health emergency [declared by the appropriate federal, state, or local authority]," and "such risk cannot be adequately mitigated in a timely manner."

U.S.S.G. §§ 1B1.13(b)(1)(B)(i), (C), (D)(ii).  "Other reasons" is defined under subsection (5) as "any other circumstance or combination of circumstances that, when considered by themselves or together with any of the [other listed extraordinary and compelling reasons], are similar in gravity to [those reasons]." *Id.* § 1B1.13(b)(5).  The Court will address each proposed extraordinary and compelling reason in turn.

First, with respect to subsection (1)(D)(ii), Hidrovo has not established that there is an "ongoing outbreak" of COVID-19 at Fort Dix or a current public health emergency.  The COVID-19 federal Public Health Emergency expired in May 2023.  *See* Dep't of Health and Human Svcs., "COVID-19 Public Health Emergency," https://tinyurl.com/46da9xfx.  The Court recognizes that COVID-19 remains in our society, and that a carceral setting can present a heightened risk of transmission to vulnerable individuals.  Moreover, Hidrovo's medical conditions place him at increased risk of severe illness if he contracts COVID-19 compared to someone without those conditions.[2]  Nonetheless, in 2025, the risk of contracting COVID-19 constitutes a significantly different circumstance than it did in the early years of the

---

[2] Hidrovo stated in his first motion that he has already contracted COVID-19 at least once. Doc. 158 at 5.  Fortunately, it appears that he did not experience severe illness or lasting impacts from it.

pandemic. Absent a current outbreak or public health emergency, Hidrovo has not established that it is an extraordinary and compelling reason for compassionate release.

Next, Hidrovo has not demonstrated that the BOP is not providing the required long-term or specialized care for his medical conditions, or that those conditions substantially diminish his ability to provide self-care in prison. U.S.S.G. §§ 1B1.13(b)(1)(B)(i), (C). Although the Court acknowledges that Hidrovo suffers from a myriad of medical conditions that impact his daily life, it does not find that his conditions or the BOP's treatment of them rises to the level of severity contemplated by the Guidelines—particularly absent evidence that he has pursued the BOP's administrative processes for requesting the accommodations he argues are lacking, such as hearing aids or a diabetic diet. Hidrovo also argues that the conditions of confinement he experienced during the COVID-19 pandemic, such as the inability to exercise during prolonged lockdowns, are evidence that the BOP does not allow him to provide self-care. Elsewhere, however, he concedes that such lockdowns have not been in place in years, and that his physical condition prevents him from exercising. *See* Doc. 179. In all, Hidrovo has not established that his medical circumstances constitute an extraordinary and compelling reason.

For many of the same reasons, the combination of factors Hidrovo lists are not "similar in gravity" to the extraordinary and compelling reasons listed in the Guidelines such that they would constitute "other reasons" under U.S.S.G. § 1B1.13(b)(5). The Court sympathizes with Hidrovo's deterioration in physical health

and the conditions of confinement that he and other inmates experienced during the unprecedented COVID-19 public health crisis. Viewed in totality, however, these and the other factors Hidrovo lists are not on equal footing with the exceptional circumstances the Guidelines identify as warranting the unusual relief of a sentence reduction.

Even if Hidrovo had established the existence of an extraordinary and compelling reason, the Court would find that the § 3553(a) factors do not support a further reduction in his sentence. The Court already determined that the § 3553(a) factors supported a 15-month reduction in his sentence based upon the retroactive applicability of Amendment 821. *See* Doc. 191. The resulting term of incarceration, which will terminate later this year, adequately reflects the seriousness of the offense as well as Hidrovo's personal characteristics. His motion for compassionate release is therefore denied.

Accordingly, it is **ORDERED**:

1. Defendant Manuel Antonio Rengfrio Hidrovo's Amended Motion for Compassionate Release (Doc. 169) is **DENIED**.

**DONE** and **ORDERED** in Tampa, Florida on January 29, 2025.

Charlene Edwards Honeywell
United States District Judge

Copies furnished to:

Counsel of Record
Unrepresented Parties